UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                Case No. 23-2096

FOX RUN APARTMENTS, LLC;
PETERSON PROPERTIES, INC.;              **JURY TRIAL DEMANDED**
MARILYN LIGHT;
CHRISTY DONNICI;
and DEBORAH ALEXANDER,

    Defendants.

## COMPLAINT

The United States of America, for its complaint against Defendants Fox Run Apartments, LLC, Peterson Properties, Inc., Marilyn Light, Christy Donnici, and Deborah Alexander, alleges:

## NATURE OF ACTION

1. This is an action brought by the United States to enforce the provisions of Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, *et seq*. ("Fair Housing Act").

2. The United States brings this action for injunctive relief and monetary damages on behalf of Joseph Versola ("Complainant") and his 18-year old son, aggrieved person Isaiah Versola, pursuant to the Fair Housing Act, 42 U.S.C. § 3612(o).

3. The United States alleges that Defendants discriminated in the rental of a dwelling and in the terms and conditions of rental because of a prospective renter's disability[1] by making housing unavailable and by refusing to make reasonable accommodations in rules, policies, practices or services when such accommodations may be necessary to afford a person equal opportunity to enjoy a dwelling, in violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(1), (f)(2), and (f)(3)(B).

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. § 3612(o).

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 3612(o).

## PARTIES AND SUBJECT PROPERTY

6. Plaintiff is the United States of America.

7. At all times relevant to this Complaint, Defendant Fox Run Apartments, LLC ("Defendant Fox Run Apartments") was the owner of the apartment and townhome complex consisting of 515 units commonly referred to as Fox Run Apartments, LLC, located at 7650 Goddard St, Shawnee, Kansas (the "Subject Property").

---

[1] The Fair Housing Act uses the term "handicap," *see* 42 U.S.C. § 3602(h), but consistent with modern usage, the government uses the term "disability" in this Complaint.

8. At all times relevant to this Complaint, Defendant Peterson Properties Inc. ("Defendant Peterson Properties") was the owner and manager of the Subject Property.

9. At all times relevant to this Complaint, Defendant Marilyn Light ("Defendant Light") was employed by Defendant Peterson Properties as the Regional Manager. As part of her duties, Defendant Light had authority to grant routine reasonable accommodation requests at the Subject Property.

10. At all times relevant to this Complaint, Defendant Christy Donnici ("Defendant Donnici") was employed by Defendant Peterson Properties and worked as the Property Manager for the Subject Property. She provided the day-to-day management of the Subject Property. Defendant Donnici reported to Defendant Light.

11. At all times relevant to this Complaint, Defendant Deborah Alexander ("Defendant Alexander") was employed by Defendant Peterson Properties as the Leasing Office Assistant for the Subject Property. Defendant Alexander reported to Defendant Donnici.

12. The Subject Property constitutes a "dwelling" within the meaning of 42 U.S.C. § 3602(b).

## FACTS

13. Complainant Joseph Versola is a United States Army veteran with a disability within the meaning of 42 U.S.C. § 3602(h). Complainant has been diagnosed with Post Traumatic Stress Disorder, Attention Deficit Hyperactivity Disorder, and depression, which affect the major life activities of interacting with others and working.

3

14. On May 2, 2019, Complainant's Department of Veterans Affairs ("VA") psychiatrist signed a letter that stated that she was "familiar with [Complainant's] history and with the functional limitations imposed by his emotional/mental health-related disorder(s)." She concluded that "[h]e meets the definition of disability under…the Fair Housing Amendments Act of 1988…". Complainant's psychiatrist also described his need for an emotional support dog, stating, "I have prescribed that Mr. Versola obtain a dog of his choosing. The presence of the dog, along with medication, is necessary for his emotional/mental health because its presence will mitigate the symptoms he is currently experiencing."

15. Complainant chose a 70-pound Doberman Pinscher named Teal as his emotional assistance animal. Since Teal has been living with Complainant, Teal has helped to mitigate Complainant's difficulties with hypervigilance, staying focused, and intrusive negative thoughts by providing affection and emotional support.

16. In June 2020, Complainant and his son were seeking new housing instead of renewing their lease on their apartment in Shawnee, Kansas, which was set to expire on or around June 30, 2020.

17. On or about June 2, 2020, Complainant went to the Subject Property to inquire about renting an apartment unit there. Complainant found the Subject Property attractive because it was affordable, it was located in a desirable school district for his son, who was 16 years old at the time, and it had a large one-bedroom unit with a balcony/patio area.

18. Paragraph 6(a) of Defendants' lease states, "[a]t the sole and exclusive option of the Owner, small pets, including dogs and cats, may be kept in the premises," however, "no pets over twenty-five (25) pounds when fully grown will be permitted."

19. On or about June 3, 2020, Complainant completed an application for the Subject Property. The application contained the question, "[w]ill you or any occupant plan to have a pet/animal during the occupancy?" Complainant responded to this question by checking Yes, and he added a handwritten note that stated, "VA-ESA Letter – Doberman Pincher [sic] 1 ½ yo 70+ lbs." Complainant then handed the application, along with an original copy of his VA psychiatrist's May 2019 letter, to Defendant Donnici. Complainant informed Donnici he needed the letter back because it was an original. Defendant Donnici copied the letter and returned the original to Complainant.

20. The U.S. Department of Housing and Urban Development's (HUD) Guidance on Documenting an Individual's Need for Assistance Animals in Housing states, "[h]ousing providers may not require a health care professional to use a specific form (including this document), to provide notarized statements, to make statements under penalty of perjury, or to provide an individual's diagnosis or other detailed information about a person's physical or mental impairments." *See* HUD Office of Fair Housing & Equal Opportunity, FHEO-2020-01, Assessing a Person's Request to Have an Animal as a Reasonable Accommodation Under the Fair Housing Act ("HUD Guidance") at 16.

21. On June 16, 2020, at 3:32 p.m., Defendant Donnici sent an email to Complainant informing him, in part, "I am able to approve your lease at this time. We can

discuss a sooner move in date, but I will need the service animal info back to send it to corporate for approval, before your service animal can move in."

22. On June 17, 2020, Complainant completed three forms required by Defendant Peterson Properties: Assistance Animal Identification Form, Reasonable Accommodation Request Form, and Reasonable Accommodation – Third-party Verification Form. The Third-party Verification Form needed to be completed in two sections. The first section contained Complainant's information and his authorization for Defendants to obtain his private healthcare information. In the second section, Complainant's healthcare provider was required to complete and sign the bottom of the form after answering three health-related questions concerning Complainant.

23. The three questions on the Third-party Verification Form Complainant's healthcare provider was asked to answer were:

(1) Is this person disabled as defined by The Fair Housing Act?    Yes or No

(2) Based on the specific disability, does this person require the
the requested accommodation or modification exactly as
stated above in order to have equal enjoyment of the premises
as would a non-disabled resident?    Yes or No

(3) If asked, would you testify to this in a legal or administrative
proceeding?    Yes or No

24. Defendant Light was the person who decided whether to approve or deny reasonable accommodation requests. As a policy and practice, she only granted reasonable accommodation requests after healthcare providers circled "Yes" to Questions (1) and (2) and signed the Third-party Verification Form.

25. Defendant Light did not deny reasonable accommodation requests if a healthcare provider answered "No" to Question (3).

26. Complainant's VA psychiatrist's May 2, 2019, letter, which Defendant Donnici received on or about June 3, 2020, provided the information that answered Questions (1) and (2) on the Third-party Verification Form.

27. On or about June 23, 2020, Defendant Alexander called Complainant to let him know Defendants had not received the signed Third-party Verification Form from his psychiatrist's office and if Defendants did not receive the form by Friday, June 26, 2020, at 5:00 p.m., his rental application would be denied. Complainant was scheduled to move in on Monday, June 29, 2020.

28. On or about June 23, 2020, upon learning that completion of the Third-party Verification Form was necessary for Teal to move in, Complainant immediately contacted his psychiatrist's office and learned she was on leave and would not return to the office until Monday, June 29, 2020. On June 23, 2020, Complainant then called Defendant Alexander to let her know that his psychiatrist would not be able to sign the Third-party Verification Form by Friday, June 26, 2020, at 5:00 p.m.

29. On June 23, 2020, at 6:01 p.m., Complainant sent an email to Defendant Donnici explaining his conversations with Defendant Alexander. He said, "I was contacted by Debra or Debbie from FoxRun Apts. Office [sic] regarding my Emotional Support Animals [sic] (ESA) today at 1235. She explained, [sic] that she has not heard from VA HealthCare System Mental Health Dept. – Dr. Nora Ekeanya; [sic] regarding my ESA letter

7

verification. In addition, she also informed me; [sic] that if FoxRun Apts. Does [sic] not hear from the VA by June 26, 2020 by 1700, then my rental application will be denied." Complainant then asked, "I need to know, if this going to be an issue? Is my move-in date on June 29, 2020, would be [sic] delayed or denied due to this unforeseeable circumstances [sic]? Please notify me, as soon as possible, because I already had made arrangements with a friend and his moving truck to help with the move on June 29th."

30. Defendant Donnici did not respond to Complainant's June 23, 2020, email.

31. On June 24, 2020, Complainant sent Defendant Donnici a follow-up email. In this email, he reiterated his understanding that if the "VA ESA letter verification is not returned to FoxRun Apts. On [sic] June 26th by the end of business – 1700; [sic] then my application will be denied. This is according to FoxRun Corporate Mgmt." Complainant informed Defendant Donnici it would be impossible for his VA psychiatrist to sign the form since she would not return to her office until June 29, 2020. He also stated, "the FoxRun Apts have not given [sic] any choice but to pursue another apartment complex." He asked Defendant Donnici to refund his $200 deposit as soon as possible.

32. On June 26, 2020, at 11:46 a.m., Defendant Donnici responded to Complainant's email with "RE: Rental Application Denied/Deposit Refund" as the subject and asked Complainant a single question: "What is your forwarding address for us to send the refund to?"

33. On June 26, 2020, Pat DeSitter, employed by Defendant Peterson Properties as the Assistant Manager for the Subject Property, completed the Apartment Disposition

form for Complainant's approved apartment, Unit 204, noting "6-26-20 CANCELLED" – "Therapy Animal Not Approved."

34. On June 26, 2020, Defendant Donnici signed a form entitled Notice of Intent to Cancel Complainant's lease and wrote, "[a]nimal exceeding occupancy limits and the request to be classified as an assistance animal was not met prior so tenant decided to cancel."

35. The HUD Guidance does not contain a specific deadline by which housing providers must act on requests for reasonable accommodation. To the contrary, the HUD Guidance states that, in assessing a person's request to have an animal as a reasonable accommodation under the Fair Housing Act, a housing provider may not deny the accommodation on the grounds that the person requesting the accommodation has not provided sufficient information until the requester has been provided a reasonable opportunity to do so. *See* HUD Guidance at 9.

36. On June 26, 2020, Defendant Light stated that the reason for Complainant's cancelation was "no reply by 3rd party after multiple requests to respond." This document also contains a note, "prospect didn't want to m/in 6/29 w/out dog. Hold up his medical provider yet we must process w/n Fed guidelines. He cancelled m/in."

## PROCEDURAL BACKGROUND

37. On or about August 6, 2020, Complainant filed a complaint with the U.S. Department of Housing and Urban Development alleging that Defendants discriminated

against him on the basis of his disability. On or about July 25, 2022, Complainant filed an amended complaint.

38. As required by the Fair Housing Act, 42 U.S.C. § 3610(a) and (b), the Secretary of HUD ("Secretary") conducted an investigation of the complaint made by Complainant, attempted conciliation without success, and prepared a final investigative report.

39. Based on the information gathered in the HUD investigation, the Secretary, pursuant to 42 U.S.C. § 3610(g), determined that reasonable cause exists to believe that illegal discriminatory housing practices occurred. On August 25, 2022, the Secretary issued a Determination of Reasonable Cause and Charge of Discrimination pursuant to 42 U.S.C. § 3610(g), charging the Defendants with discrimination under the Fair Housing Act.

40. On September 13, 2022, Defendants elected to have the claims asserted in HUD's Charge of Discrimination resolved in a federal civil action pursuant to 42 U.S.C. § 3612(a).

41. On September 15, 2022, a HUD Administrative Law Judge issued a Notice of Election and terminated the administrative proceedings on the HUD complaint filed by Complainant. Following the Notice of Election, the Secretary authorized the Attorney General to commence a civil action pursuant to 42 U.S.C. § 3612(o).

42. The United States now timely files this Complaint pursuant to the Fair Housing Act, 42 U.S.C. § 3612(o). Defendants agreed to tolling agreements extending the filing deadline to March 3, 2023.

## FAIR HOUSING ACT VIOLATIONS

43. The United States incorporates by reference the preceding paragraphs of this Complaint.

44. Defendants made housing unavailable by refusing to grant Complainant a reasonable accommodation in rules, policies, practices, or services, when such accommodation was necessary to afford him an equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(1) and (f)(3)(B).

45. Defendants discriminated against Complainant in the terms and conditions of rental by refusing to grant him a reasonable accommodation to allow him to move in with his assistance animal and by requiring his psychiatrist to complete an unnecessary Third-party Verification Form by an arbitrary deadline, in violation of 42 U.S.C. § 3604(f)(2) and (f)(3)(B).

46. Complainant and his son are "aggrieved persons" within the meaning of 42 U.S.C. § 3602(i).

47. Defendants' discriminatory actions were intentional, willful, and taken in disregard of the rights of the Complainant and his son.

## REQUEST FOR RELIEF

WHEREFORE, the United States requests that this Court:

1. Declare that Defendants' discriminatory housing practices as set forth above violate the Fair Housing Act;

  2. Enjoin and restrain Defendants, their officers, employees, agents, successors, and all other persons or corporations in active concert or participation with Defendants, from:

    A. Discriminating in the sale or rental, or otherwise making unavailable or denying, a dwelling to any buyer or renter because of disability, in violation of 42 U.S.C. § 3604(f)(1);

    B. Discriminating against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of disability, in violation of 42 U.S.C. § 3604(f)(2);

    C. Refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B); and

  3. Order Defendants to take such affirmative steps as may be necessary to restore, as nearly as practicable, Complainant and his son to the position they would have been in but for the discriminatory conduct;

  4. Order Defendants to take such actions as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of their unlawful conduct, including implementing policies and

procedures to ensure that no applicants or residents are discriminated against because of disability;

5. Award monetary damages to Complainant and his son pursuant to 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1); and

6. Order such additional relief as the interests of justice require.

Respectfully submitted,

DUSTON J. SLINKARD
United States Attorney

/s/ Andrea L. Taylor
ANDREA L. TAYLOR
Assistant United States Attorney
KS Fed. Bar No. 70422
500 State Avenue, Suite 360
Kansas City, Kansas 66101
PH: (913) 551-6730
FX: (913) 551-6541
Email: andrea.taylor@usdoj.gov
Attorneys for the United States

### REQUEST FOR PLACE OF TRIAL

Plaintiff United States of America hereby requests that the trial of the above-entitled matter be held in the City of Kansas City, Kansas.

/s/ Andrea L. Taylor
ANDREA L. TAYLOR
Assistant United States Attorney