IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 2:23-cv-02096-HLT-GEB |
| FOX RUN APARTMENTS, LLC, et al., | |
| Defendants. | |

**MEMORANDUM AND ORDER**

Joseph Versola applied to live at Fox Run Apartments with his 70-pound Doberman Pinscher emotional support animal ("ESA"). Office staff sought to verify his reasonable-accommodation paperwork because it was over a year old and did not identify a specific animal. But Versola's psychiatrist was out of the country until after the verification deadline, so Versola withdrew his application and requested a refund.

The United States of America filed this lawsuit against Fox Run, its owner/manager, and three individual staff members alleging a failure to accommodate claim under the Fair Housing Act ("FHA"). Defendants responded with a bevy of counterclaims and third-party claims. All parties moved to voluntarily dismiss all claims. But the lawsuit remains open to address Defendants' request for fees, costs, and related discovery. Doc. 104. The Court finds that the government's case was not frivolous, that its position was substantially justified, and that fees and costs are not otherwise warranted. The Court denies the motion and denies the request for discovery.

**I.      BACKGROUND**[1]

In 2020, Fox Run Apartments, LLC owned an apartment and townhome complex in Shawnee, Kansas. Peterson Properties, Inc. was the owner and manager of the property. Peterson Properties employed Marilyn Light as the regional manager. She has authority to grant reasonable-accommodation requests. Christy Donnici was the property manager who provided day-to-day management of the property and reported to Light. Deborah Alexander was the leasing office assistant, and she reported to Donnici.

Versola is a United States Army veteran with post-traumatic stress disorder, attention deficit hyperactivity disorder, and depression. He applied to live at Fox Run Apartments on June 3, 2020 because his current lease at a different complex was expiring on or around June 30. Versola stated that he planned on having a pet during his occupancy. Fox Run allowed small pets weighing up to 25 pounds when fully grown. Versola added a handwritten note on his application stating "VA-ESA Letter – Doberman Pincher [sic] 1 ½ yo 70+ lbs." Doc. 1 at 5 ¶ 19. He also added his VA psychiatrist's May 2019 letter to his application.[2] The letter prescribed a dog of Versola's choosing but did not identify the pet. *See* Doc. 104-1 at 4 ¶ 20.

On June 16, Donnici sent Versola an email informing him that she could approve his lease, but she needed the "service animal info back to send it to corporate for approval, before your service animal can move in." Doc. 104-17 at 1. Versola completed three forms and returned them the next day: (1) an assistance animal identification form, (2) a reasonable-accommodation request form, and (3) a reasonable-accommodation third-party verification form. The verification form

---

[1] The following facts are supported by the record.

[2] Defendants contend Versola did not submit the letter with his application. But the actual timing of when they received the letter is immaterial for purposes of this Memorandum and Order. What matters is that there is evidence supporting the fact that Versola gave them the letter with his application.

had a section that required Versola's healthcare provider to answer three health-related questions and sign at the bottom. Defendants faxed the form to Versola's psychiatrist three times (on June 18, 22, and 24) but did not receive a response.

On June 23, Alexander called Versola to say that Defendants had not received the signed third-party verification from his psychiatrist's office. Alexander told Versola that if Defendants did not receive the form by Friday, June 26, his rental application would be denied. Versola was scheduled to move in on Monday, June 29. Versola contacted his psychiatrist and learned that she was on leave and would not return to the office until June 29. Versola called Alexander to tell her that his psychiatrist would not be able to sign the form by Friday. He then followed up with an email to Donnici at 6:01 p.m. on June 23. Versola recounted the information about his psychiatrist to Donnici and said that Alexander told him she needed to consult management about the situation because she was not authorized to make the decision. He explained that he needed to know if a delayed return of the paperwork would be an issue because he had already arranged to move on June 29. Doc. 104-1 at 1. Donnici did not respond. But the next morning beginning shortly after 8:00 a.m., Light faxed Versola's verification form to the psychiatrist for the third time. And Donnici and Light were discussing by email how to proceed without the verification. Versola was unaware that Donnici and Light were discussing options. Likewise, the government represents that Defendants did not produce these emails to HUD until after the Charge of Discrimination. Doc. 105 at 10.

Versola emailed Donnici again at 11:26 a.m. on June 24, stating that Alexander had informed him that his application would be denied if his verification was not returned by the end of business on June 26. He added, "This is according to FoxRun Corporate Mgmt." Doc. 104-6 at 1. He explained that it would be impossible for his psychiatrist to sign the form on time, so "the

3

FoxRun Apts have not given [me] any choice but to pursue another apartment complex." *Id.* He asked Donnici to refund his $200 deposit as soon as possible. Versola then called his psychiatrist's office on June 25 to say that he no longer wanted the form completed. Doc. 104-7 at 1.

Donnici responded to Versola's June 24 email on June 26. She asked, "What is your forwarding address for us to send the refund to?" *Id.* Donnici signed a notice of intent to cancel lease form and wrote "[a]nimal exceeding occupancy limits and the request to be classified as an assistance animal was not met prior so tenant decided to cancel." Doc. 1 at 9 ¶ 34. That same day another Peterson Properties employee completed an apartment disposition form for Versola's apartment with "'6-26-20 CANCELLED' – 'Therapy Animal Not Approved.'" *Id.* at 8-9 ¶ 33. Light listed the reason for Versola's cancellation as "no reply by 3rd party after multiple requests to respond." *Id.* at 9 ¶ 36. She also wrote "prospect didn't want to m/in 6/29 w/out dog. Hold up his medical provider yet we must process w/n Fed guidelines. He cancelled m/in." *Id.*

Versola filed a complaint with HUD alleging disability discrimination in August 2020. HUD notified Donnici, Alexander, and Peterson Properties[3] on August 6 of the complaint, its responsibility to attempt conciliation, and the conciliation process. Doc. 16-1 at 33-35. Versola made a conciliation offer on November 10, 2020. *Id.* at 114. HUD had no response to the offer by November 20 and requested an update from counsel representing Donnici, Alexander, and Peterson Properties. *Id.* at 118. HUD contacted counsel again on December 3. At that time, counsel rejected Versola's offer on her clients' behalf. *Id.* at 120. HUD reached out again after investigating for about a year-and-a-half, to gauge interest in further conciliation discussions. *Id.* at 122. Counsel did not respond. HUD notified counsel on June 28, 2022 that HUD's "attempts to reach a

---

[3] Light and Fox Run were not included in the original HUD complaint. They were added to an amended complaint in 2022.

4

satisfactory resolution of the complaint [had] failed" and that HUD would not attempt further conciliation. *Id.* at 124.

Versola filed an amended HUD complaint on July 25, 2022. The HUD Secretary issued a Determination of Reasonable Cause and Charge of Discrimination under 42 U.S.C. § 3610(g) on August 25. Doc. 104-1. Defendants asked the HUD Office of Hearings and Appeals to require conciliation on September 22, and alternatively elected to have the charge resolved in a federal civil action under 42 U.S.C. § 3612(a). Doc. 104-13. The government filed this complaint under 42 U.S.C. § 3612(o) on March 3, 2023. The government moved to voluntarily dismiss with prejudice its complaint on December 11, 2023, and the Court granted the motion on December 20. Defendants moved to voluntarily dismiss their counterclaims and third-party claims on January 5, 2024, and the Court granted the motion on March 4. All claims have been dismissed, but Defendants seek fees and costs.

## II. STANDARD

The question of whether the United States may be responsible for fees and costs in FHA cases is governed by the EAJA. 42 U.S.C. § 3612(p). A court may award fees and costs to the "prevailing party" in an action by or against the United States or its agency. 28 U.S.C. §§ 2412(b), (d)(1)(A) (fees), (a)(1) (costs).

There are two circumstances under which a court may award fees against the United States: (1) "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award"; and (2) "unless the court finds

that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. §§ 2412(b), (d)(1)(A).

A party seeking fees under the first circumstance must obtain "a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."[4] *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978); *Hatfield v. Cottages on 78th Cmty. Ass'n*, 2023 WL 3163256, at *4 (10th Cir. 2023).

A party seeking fees under the second circumstance must allege that the United States's position was not substantially justified. Courts determine substantial justification on the basis of the record. *Id.* § 2412(d)(1)(B). But courts strictly construe the EAJA because it acts as a waiver of the United States's sovereign immunity. *Est. of Smith v. O'Halloran*, 930 F.2d 1496, 1501 (10th Cir. 1991). And courts may reduce or deny fees "to the extent that the prevailing party during the court of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy." 28 U.S.C. § 2412(d)(1)(C).

## III. ANALYSIS

### A. Attorney's Fees

The government argues first that Defendants are not "prevailing parties." Only prevailing parties may recover fees under the EAJA. The Court assumes without deciding that Defendants are prevailing parties because the government is barred from reasserting the same claim against

---

[4] Bad faith itself also provides grounds for fees. *F.T.C. v. Kuykendall*, 466 F.3d 1149, 1152 (10th Cir. 2006). But Defendants do not overtly argue bad faith under § 2412(b), despite making numerous allegations that, if true, would hint at bad faith. *See* Doc. 104 at 1-2 ("While the Court may eventually look to HUD and the [government's] bad faith to make the Court's determination on fees, here even just looking at the base allegations, the Court must find that there was no factual or legal basis for the charges leveled against the Defendants, and that Defendants are entitled to an award of their attorney fees and costs of the present action."); 10 ("HUD's subjective bad faith is an even stronger basis for charging HUD with [attorney's] fees."). The Court discerns no basis for finding bad faith for the reasons stated in Section III.A.

them under the doctrine of res judicata. The Court moves directly to whether the government's case is frivolous or substantially justified.

The Court dispenses with Defendants' frivolousness argument. The Court denied Defendants' motion to dismiss the case, finding that the government's claim was plausible. A plausible claim is not frivolous. A frivolous suit "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The case would not have survived a motion to dismiss were it frivolous. Of course, the Court was taking the government's allegations as true at that point in the litigation. And Defendants have proffered reasons in the instant motion suggesting those allegations may be controverted. But Defendants do not contend the evidence relied upon by the government doesn't exist. (And it does exist.) They just contend that there are reasons not to believe the evidence. Defendants' criticisms do not render the government's factual basis for the case "frivolous, unreasonable, or without foundation." *Christiansburg Garment Co.*, 434 U.S. at 421. HUD's charge and the eventual federal complaint are both based on an investigation spanning nearly two years. The investigation included interviews with Versola, written questionnaires to Defendants, and review of documentation submitted by both parties. Doc. 104-31. It appears that the HUD file contains nearly one thousand pages. *Id.* There are no grounds for finding it frivolous. The Court next turns to the standard for "substantially justified."

The position that must be substantially justified is the position both in the underlying agency action, as well as subsequent litigation. *Hadden v. Bowen*, 851 F.2d 1266, 1267 (10th Cir. 1988). A substantially justified position is one reasonable in law and fact. *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007). A substantially justified position requires more than merely being "undeserving of sanctions for frivolousness." *Pierce v. Underwood*, 487 U.S. 552, 566 (1988). But a position may be substantially justified even if incorrect if a reasonable person could

find it correct. *French v. Sullivan*, 1992 WL 24098, at *1 (D. Kan. 1992). The government's "decision to litigate [need not be] based on a substantial probability of prevailing" to be substantially justified. *Hadden*, 851 F.2d at 1268 (citation and internal quotation marks omitted). The reasonableness test has three parts: (1) factual allegations grounded in a reasonable basis; (2) a legal theory that is reasonable; and (3) reasonable factual support for the legal theory. *Gutierrez v. Sullivan*, 953 F.2d 579, 585 (10th Cir. 1992). The government bears the burden to show that its position was substantially justified. *Gilbert v. Shalala*, 45 F.3d 1391, 1394 (10th Cir. 1995). The determination of whether the government's position was substantially justified is within the court's discretion. *Maxey v. Sullivan*, 791 F. Supp. 841, 842 (D. Kan. 1992).

The government alleged in the complaint that (1) "Defendants made housing unavailable by refusing to grant [Versola] a reasonable accommodation in rules, policies, practices, or services, when such accommodation was necessary to afford him an equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(1) and (f)(3)(B)"; and (2) "Defendants discriminated against Versola in the terms and conditions of rental by refusing to grant him a reasonable accommodation to allow him to move in with his assistance animal and by requiring his psychiatrist to complete an unnecessary Third-party Verification Form by an arbitrary deadline, in violation of 42 U.S.C. § 3604(f)(2) and (f)(3)(B)." Doc. 1 at 11. These allegations follow almost directly from the HUD charge of discrimination. *See* Doc. 104-1 at 5-6. Both are supported by factual allegations and record evidence that meet the requirements of a plausible claim for failure to accommodate.

A plausible claim brought on a complainant's behalf for failure to accommodate requires: (1) that the complainant has a disability; (2) that the defendants knew or should reasonably be expected to know of the disability; (3) that accommodation of the disability may be necessary to

8

afford the disabled person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that the defendants refused to make the requested accommodation. *Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006).

The record supports a finding that Versola has a disability, that he told Fox Run of the disability, that he could not use and enjoy the apartment without his ESA, that his request to live with his ESA was reasonable, and that Defendants did not offer Versola an accommodation of any kind before Versola decided that he could not continue to wait to hear from them. There is a reasonable basis for these factual allegations and they reasonably support the government's legal theories.

Of course, the record—viewed from Defendants' perspective—also supports a finding that some of these elements are missing. It appears reasonable that Defendants sought to verify Versola's need for his ESA given the age of his letter and the failure to identify a specific dog within the letter. Upon learning of the psychiatrist's unavailability, it seems that Light and Donnici may have discussed other accommodations short of letting Versola move in with the dog. As the Court noted in its order on Defendants' motion to dismiss, other reasonable accommodations existed. Doc. 27 at 9. Defendants contend they were discussing other options. But the reality is that these options were never conveyed to Versola, before or after he requested a refund. And it is not clear that Defendants had decided on any specific accommodation to convey to Versola. *See* Doc. 104-5 (discussing options). In any event, conflicting evidence (and particularly evidence of which Versola was unaware) does not undercut the reasonableness of the government's position.

Defendants disagree with this outcome. They contend that the government had no reasonable basis for its factual allegations and no reasonable factual support for its legal theories.

9

Defendants identify what they characterize as "a string of <u>knowing</u> misrepresentations; altered documents; and outright lies." Doc. 104 at 5; *see also id.* at 6 (referring to "fabricated documents"). They contend that the government's "allegations and omissions are bent on misleading the Court." *Id.* at 12.

Defendants' accusations are bold. They use loaded words to suggest that the government's actions were infused with malicious intent. Allegations of misconduct like those made by Defendants should be rare, and only made when readily substantiated. For this reason, Defendants' allegations caught the Court's attention. The Court spent considerable time reviewing the record and unwinding the allegations. Having reviewed the record objectively, the Court determines that, at best, the evidence Defendants cite is open to two views. It may lessen the strength of the government's case, but it does not remove the reasonable basis for bringing the case. At worst, the evidence does not support Defendants' allegations of misconduct.

The Court does not address Defendants' allegations and the evidence at length here.[5] But a few examples demonstrate the holes in Defendants' position.

As a first example, Defendants point to Versola's June 24 email to Donnici, where he stated that Alexander told him that his application "will be DENIED" and that "[t]his was according to FoxRun Corporate Mgmt" if his verification was not returned to Fox Run by the end of the day on June 26. Defendants contend that Versola then <u>admitted</u> during his deposition that Alexander did not tell him he was denied by corporate management.[6] Doc. 104 at 4, 4 n.2, 8. But Versola's deposition testimony does not support this allegation. Instead, Versola said, "The verbiage might

---

[5] There are many arguments and record citations that the Court does not address here. Rest assured, the Court has combed the record and carefully considered the parties' positions, even if not specifically discussed. The Court discusses those matters that are central to the Court's ruling but does not address many of the ancillary disputes between the parties.

[6] Defendants also make the following statement without further explanation or citation: "Defendants believe [Versola] was coached by HUD on this issue." Doc. 104 at 4 n.2.

10

be wrong. I have no idea. I was mad at the time because I got put in a situation where I need to make hasty decisions about getting an apartment complex." Doc. 104-2 at 7. Characterizing this statement as an admission stretches Versola's testimony too far. And Versola's June 24 email may be explained another way. HUD's Determination of Reasonable Cause reports that Versola had other conversations with Alexander between his June 23 and June 24 email and that she told him via phone that "per corporate management, the application would be denied if the verification form was not returned by 5:00 p.m. on June 26, 2020." Doc. 104-1 at 11. Versola's deposition testimony may muddy the water as to what Alexander told him. But it does not conclusively establish that Versola lied or HUD and the government lacked a reasonable basis for their position.

As a second example, Defendants accuse HUD or the government of <u>altering</u> or <u>forging</u> a fax. Doc. 104 at 7. They claim that the government attempts to blame Defendants for not giving Versola's psychiatrist enough time to respond by using a fax verification form stating the fax was transmitted on June 23 even though the fax stamp says it was faxed on June 18. Defendants state, "**<u>The fax has been altered or is a forgery</u>**, and/or was generated by someone other than Defendants to prove a lie." *Id.* This allegation strains credulity. The time stamp on the fax indicates that the psychiatrist's office did not receive the form until June 23, 2020 at 8:51 a.m. Defendants have presented evidence that they faxed it twice before that date. But when a fax was sent and when it was received are two different matters. There may have been any number of reasons the fax did not transmit or was not received until days after it was sent. Again, the evidence may be viewed two ways. Defendants view it as proof of malicious intent. But this is not the only lens through which the evidence may be viewed. And in any event, the date the form was faxed does not play a critical role in whether HUD and the government lacked a reasonable basis for their position.

The Court recognizes this is a contentious case. Both sides could have done things differently and perhaps reached a different outcome. Defendants are unquestionably upset because the government, who is charged with representing the people, brought claims against individual office workers and publicly announced the charges, which the government then dismissed early in the case. But Defendants equally contributed to the case's trajectory. They could have advanced the litigation in a different way or fully engaged in conciliation earlier. Ultimately, no one knows how a jury would have viewed the evidence. But the Court is not charged with resolving whether Defendants failed to accommodate Versola. What the Court does resolve here is whether HUD and the government had a reasonable basis for their position. An objective review of the evidence shows that they did. Specifically, the Court finds (1) a reasonable basis for the factual allegations; (2) reasonable legal theories; and (3) reasonable support for the theories advanced. This does not mean that the government undoubtedly would have won the case. But a guaranteed win is not the standard. Reasonableness is the standard. The government and HUD both meet that standard, and the Court determines that fee-shifting under the EAJA is not warranted.[7]

Finally, Defendants request attorney's fees under Rule 41(d). This rule has no application here. It authorizes a fee award when a plaintiff previously dismissed an action. This case is not a second or subsequent action. Rule 11 sanctions are likewise improper. Defendants have not taken any of the necessary steps to pursue Rule 11 sanctions. *Compare* Fed. R. Civ. P. 11(c)(2) (safe

---

[7] There are other grounds for denying an award of attorney's fees to Defendants. 28 U.S.C. § 2412(d)(1)(A) permits courts to decline to award fees where "special circumstances make an award unjust." And 28 U.S.C.A. § 2412(d)(1)(C) provides that "[t]he court, in its discretion, may reduce the amount to be awarded pursuant to this subsection, or deny an award, to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy." The Court alternatively finds under the circumstances of this case that fees are not appropriate under both of these statutory provisions. There are both special circumstances and an unwarranted protraction of litigation. The Court finds these elements in Defendants' aggressive allegations of lies and alteration of documents, and in their counterclaims and third-party claims filed without apparent consideration of established concepts of sovereign immunity, exhaustion, and proper pleadings. *See generally* Doc. 51.

harbor provisions), *Roth v. Green*, 466 F.3d 1179, 1193 (10th Cir. 2006) ("[T]he plain language of subsection (c)(1)(A) [outdated subsection reference] requires a copy of the actual motion for sanctions to be served on the person(s) accused of sanctionable behavior at least twenty-one days prior to filing of that motion.") *to* Doc. 104-25 (demand letter from defense counsel). And they have not made any showing that sanctions against counsel are appropriate under 28 U.S.C. § 1927. The Court also denies these requests.

   **B.    Costs**

Defendants also request their costs. Again, the Court presumes that Defendants are a "prevailing party" because the government may not refile its claims based on res judicata. But the statutory language authorizing the imposition of costs is even more discretionary than the language addressing fees. 28 U.S.C. § 2412(a)(1) states that court "may" award costs to a prevailing party. *See Neal & Co. v. United States*, 121 F.3d 683, 686 (Fed. Cir. 1997) (comparing Rule 54's presumption of costs with EAJA's "permissive, discretionary" test that does not presume costs will be awarded). For all of the reasons counseling against a fee award, the Court also finds that the parties should bear their own costs.

   **C.    Discovery**

As for discovery, a presumption against discovery for attorney's fees motions exists. Defendants have not overcome that presumption here. They have simply made allegations and asked the Court to make inferences based on their overbroad conclusions. Some of these inferences are not supported. Fee requests "should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). This District's local rules state that "discovery may not be conducted" on attorney's fees motions "unless the court permits upon motion and for good cause." D. Kan. R. 54.2(f). This supports the notion that motions for fees generally should not involve discovery. *See E.E.O.C. v. BNSF Ry. Co.*, 2014 WL 2589182, at *7 (D. Kan. 2014); *Boardwalk*

13

*Apartments, L.C. v. State Auto. Prop. & Cas. Ins. Co.*, 2014 WL 5430252, at *3-4 (D. Kan. 2014). Defendants have not shown good cause here.

Moreover, to the extent Defendants are relying on the government's alleged failure to provide substantial justification for bringing the case, the EAJA does not contemplate that discovery will be permitted. The statute says that whether the government's position was substantially justified "shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought." 28 U.S.C. § 2412(d)(1)(B). This language indicates that courts will look at preexisting evidence. *See Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 160 (1990) (stating that "substantial justification" refers "to only one position, and it is to a position that the Government took in the past"). Defendants have not presented authority allowing discovery on an EAJA claim for fees. The Court denies this request, as well.

## IV.    CONCLUSION

As the Court previously stated, this case is not one-sided. Rather, there is evidence suggesting that Defendants effectively forced Versola to find another apartment when they should have presented alternative options to him. And there is evidence suggesting that Defendants acted reasonably under the circumstances, but the government pursued the case anyway. Whether a jury ultimately would have found in favor of the government is unknown. But none of this means that the case was frivolous or not substantially justified. And without either of those hooks, Defendants are not entitled to fees or sanctions under the EAJA or any other cited provision. Neither may they pursue discovery on the matter.

14

THE COURT THEREFORE ORDERS that Defendants' motion (Doc. 104) is DENIED.

IT IS SO ORDERED.

Dated: June 28, 2024                             /s/  *Holly L. Teeter*
                                                 HOLLY L. TEETER
                                                 UNITED STATES DISTRICT JUDGE